205 So.2d 157 (1967)
Robert W. HINEGARDNER et ux., Plaintiffs-Appellants,
v.
DICKEY'S POTATO CHIP COMPANY, Inc., et al., Defendants-Appellees.
No. 7123.
Court of Appeal of Louisiana, First Circuit.
November 13, 1967.
Rehearing Denied December 19, 1967.
Writ Refused February 2, 1968.
*159 W. Brian Babin, of Lonnie A. Davis & Associates, Walker P. Macmurdo, of Percy, Macmurdo & Gray, Baton Rouge, for Dickey's Potato Chip Co., Inc.
Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Commercial Properties Development Corporation and Liberty Mutual Ins. Co.
H. Payne Breazeale, of Breazeale, Sachse & Wilson, Baton Rouge, for Montgomery Ward & Co., Inc.
Before LANDRY, REID and BAILES, JJ.
BAILES, J.
This is an appeal by the plaintiffs-appellants, Robert W. Hinegardner and his wife, Mrs. Christine S. Hinegardner, from the judgment of the trial court rejecting their demands for damages arising out of a collision between an automobile driven by Mrs. Hinegardner and a truck owned by Dickey's Potato Chip Company, Inc. The plaintiff-husband sued for special damages ordinarily, in such cases, recoverable by the community, and the plaintiff-wife sued for general damages suffered by her by reason of the physical injuries she sustained in the collision.
The defendants are: Dickey's Potato Chip Company, Inc. (Dickey's); Commercial Properties Development Corporation (Commercial Properties), and its insurer, Liberty Mutual Insurance Company; Montgomery Ward and Company, Inc. (Montgomery Ward); and Walgreen Louisiana Company, Inc. (Walgreen).
After trial in the district court, the judge a quo found that the plaintiff-wife, Mrs. Christine S. Hinegardner, was guilty of contributory negligence which barred her recovery, and that this negligence was imputed to the claim asserted by her husband, Robert W. Hinegardner, for the community loss, and that the imputation of this negligence barred recovery of the community claim. We find the trial court correctly disposed of all issues herein, and we affirm the judgment rejecting the plaintiffs' demands.
Defendant, Walgreen, was sued alternatively for workmen's compensation benefits on the ground that the accident in which plaintiff was injured occurred on the premises of her employer and therefore within the course and scope of her employment. Walgreen filed an exception of improper cumulation of actions and parties. The trial court sustained the exception and dismissed Walgreen from this suit. Plaintiffs made no complaint of this ruling.
The relationship of the various defendants to the claims of the plaintiffs is the following: Dickey's was the owner of the truck and the employer of its driver which struck the vehicle being driven by Mrs. Hinegardner; Montgomery Ward is the owner of the business conducted in the building at the southeast corner of which this accident occurred; however the legal relationship of Commercial Properties to any of the parties is neither pleaded, admitted nor proven by or in the record.
The accident giving rise to this action occurred on March 30, 1964, between eight and nine o'clock in the morning, as Mrs. Hinegardner was driving to work. The collision between her automobile and the panel delivery truck of Dickey's occurred at the intersection of the driving lane which runs east and west in front of Montgomery Ward, and the driving lane which runs north and south along the east side of the Montgomery Ward building, on the Bon Marche parking lot.
While the overall dimensions of the parking lot are not reflected by the record, from the aerial photographs introduced in evidence, it is shown that this area is a large shopping center or complex located on the north side of Florida Blvd. in the City of Baton Rouge. Various business establishments are located along the west, north and *160 about one-half of the east side, resembling in a fashion, an inverted "J" with the long stem of the letter "J" extending along the west side of the area. Practically all of the area between the portion occupied by the business establishment and Florida Blvd. is devoted to either parking areas or driving lanes or aisles. None of this area is public property, although there is an implied invitation to the public to use this area while patronizing any of the retail establishments in the shopping center. Extending along the inside perimeter of the front of the stores and shops in this area are a sidewalk for pedestrians and a driving lane for vehicular traffic all the way from the southwest corner of the shopping center to the northeast corner of the Montgomery Ward building.
Mrs. Hinegardner testified that on the morning of the accident she entered the shopping center from Florida Blvd. near the southwest corner and drove uneventfully through the area until she reached the southeast corner of the Montgomery Ward building at the intersection to which reference is above made. As she worked at Walgreen drug store located in the northern section of the area, and following her employer's instructions to park in the rear of the business, it was her intention to make a left turn at this intersection, drive north along the east side of the Montgomery Ward building to the rear thereof, then make another left turn to drive west to the parking area to the north and in rear of Walgreen.
It was shown that on this morning, and Mrs. Hinegardner testified that for several weeks prior thereto, Montgomery Ward had a large stack of boats at this southeast corner of the building on the sidewalk as well as some shrubs leaning against the boats. Plaintiff further testified that when she arrived at this intersection she looked to her right to check for traffic, that she saw an automobile approaching the intersection from that direction, whereupon she stopped to permit it to pass. When it passed, she said she drove slowly into this intersection, it being necessary, according to her testimony, to drive into the intersection to determine if she could safely make her intended left turn; that when she was far enough into this intersection to see traffic approaching from her left, she saw the Dickey truck about 50 to 100 feet from her. She stated, "* * * I saw this panel truck coming pretty fast and I didn't have time to go nowhere nor back up because it was coming too fast, and I put on my brakes, and about the time I did that, he hit me." Also, she testified, "* * * When I saw the car I put on my brakes and he was coming fast enough that about the time I put may brakes on he hit me. * * *." She emphatically maintained that she drove no farther into the intersection than was necessary for her to look to her left or north.
The driver of the Dickey truck was Latham J. Carver. He died prior to trial from causes unrelated to this accident. It was shown, however, that he had made a delivery stop at Montgomery Ward and had started from a stopped position in the north-south driving lane about 100 feet north of the situs of the accident.
The accident was investigated by two Baton Rouge patrolmen who arrived at the scene shortly after the collision. From their investigation they determined that the point of collision between the two vehicles was twelve feet east of the west parellel line of the north-south driving lane, and twenty-one feet south of the north parallel line of the east-west driving lane. They further stated that it appeared neither vehicle was traveling very fast as both the truck and the plaintiff's passenger car were in the same position as they were when the impact occurred. In other words, it was their testimony that the vehicles had remained in the position at the point of impact. According to their testimony the right front of the Dickey truck struck the Hinegardner automobile on the left side about two feet from the left front. The force of the impact did damage to the left wheel and left front fender area.
*161 The alleged negligent acts charged to Dickey, and its driver, by the plaintiffs are operating his vehicle at a high and excessive rate of speed under the circumstances at the time; failing to see what he should have seen; failing to keep a proper watchout; failing to yield to the right of way; and entering a throughway from an alleyway without first stopping to see if it were safe to do so.
Plaintiffs, in their petition, allege Commercial Properties committed the following acts of negligence: Failed to set out and keep maintained properly marked traveling lanes, signs and warning; failed to prevent blind corners knowing the heavy rate of traffic on its premises; allowed others as well as its own agents and employees to set up and maintain obstructions to vision at "T" and "X" intersections; and failed to exercise any control whatsoever over traffic conditions in their parking areas.
The negligence of Montgomery Ward is averred to be the setting up and maintaining of displays, merchandise, shrubs and other objects thereby causing a blind corner, on pedestrian crosswalks and sidewalks.
Considering first the exposure of Commercial Properties to liability for the claims of the plaintiffs, we find from our careful perusal of the record that there is not one scintilla of evidence in the record to support the alleged negligence of Commercial Properties. In the plaintiffs' petition there is no allegation of ownership, or other relationship between Commercial Properties and any other party to this action, nor is there any proof whatever in the record to prove a relationship the averment of which is lacking in the pleadings. Certainly, we cannot supply, by inference or otherwise, that which is lacking. In their brief, as an assignment of error, plaintiffs state that the trial court erred in not finding that Commercial Properties, its insurer and Montgomery Ward were negligent. In elaborating on this specification, plaintiffs argue that there is a duty owed by the owner of a shopping center to prevent lessees from setting up and maintaining blind corners, etc. Without the plaintiffs establishing a legal relationship between Commercial Properties and Montgomery Ward which would create a duty of care on the part of Commercial Properties to Mrs. Hinegardner, we cannot consider their argument. The plaintiffs' claims against Commercial Properties are rejected at their costs.
As to plaintiffs' claims herein asserted against Montgomery Ward, assuming arguendo, that plaintiffs have proved that Montgomery Ward did in fact stack merchandise on the corner in such manner as to obscure the view of Mrs. Hinegardner to her left, we find no liability on its part to her. She testified that she had knowledge of the obscurity for she had observed this merchandise there on the corner for the past several weeks as she had driven this same route daily. Also, she acknowledged there was another route she could have taken which would have completely avoided a left turn at this corner. Further, assuming arguendo, that Montgomery Ward was negligent in creating an obscurity of view at this corner, we find no liability on its part. Not every act of negligence gives rise to a cause of action against the negligent party. For liability to attack, the negligence must be a proximate cause of the accident. In this case we find, under our assumption of negligence arguendo, that the action of Montgomery Ward was too remote to figure actively or proximately in the conduct of Mr. Carver, driver of the Dickey truck, and of Mrs. Hinegardner. Its negligence formed no part of the chain of causation and was not a cause-in fact. See Dixie Drive it Yourself System New Orleans Co., Inc. v. American Beverage Company (1962) 242 La. 471, 137 So.2d 298.
We quote approvingly from 65 C.J. S. Negligence § 103, in its discussion of proximate cause. "* * * More concisely, `proximate cause' has variously been defined as: That which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing *162 cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might reasonably have been anticipated; and the last negligent act contributing to the injury, and without which the injury would not have occurred. Other definitions of `proximate cause' are: the efficient cause, the one that necessarily sets the other causes in operation; * * *."
See Vidrine v. General Fire and Casualty Company (1964) La.App., 168 So.2d 449.
Turning now to a consideration of the part played by each of the principal actors in this accident, we have no hesitancy in concluding that the driver of the Dickey truck was negligent in driving into the intersection without regard to the possible presence of others and without keeping a sharp lookout for others who might be entering the intersection. The trial court found Mr. Carver negligent and we concur in this finding.
Inasmuch as the collision between these two vehicles occurred on private property the general highway regulatory act regarding the regulation of vehicular movement on public streets and highways is not decisive of the issues herein. Since the collision occurred on private property, the duty of care imposed on a motorist must be adjudged under the general tort law of this State. While the general highway regulatory act is not decisive, these regulations are persuasive in determining what does or does not constitute reasonable care expected and required of a motorist in the operation of his vehicle. The general highway regulatory act may be used only as a guideline in determining what is reasonable care under the particular circumstance of any given accident. Each case must be decided on this basis in relation to the particular facts and circumstances attendant thereto.
We find Mrs. Hinegardner was also negligent in the operation of her vehicle and that this negligence was a concurrent and contributing cause of this accident. The mute facts of this accident belies her version of what occurred. It cannot be disputed that Mrs. Hinegardner was twenty-one feet south of the northwest corner of this intersection and was also a distance of twelve feet east of the west side of the north-south traffic lane. Her own version of the rapidity of the action convinces us that she drove into the intersection without first determining that it could be done safely.
At many intersections, a driver will experience a lack of view similar to the instant case. Such condition creates and imposes a greater duty of care on the part of the motorist. See Vidrine v. General Fire and Casualty Company (1964), La.App., 168 So.2d 449, and Soprano v. State Farm Mutual Automobile Ins. Co. (1964) 246 La. 524, 165 So.2d 308.
Appellants argue that they are entitled to recover even though it is found that Mrs. Hinegardner was guilty of negligence under the doctrine of last clear chance. It is their position that Mr. Carver had the last clear chance to avoid the accident because of the width of the north-south traffic lane he could have driven to his left and avoided striking the plaintiff's vehicle. This doctrine has no application herein because when Mrs. Hinegardner drove into the intersection, the Dickey truck was too close for the collision to be averted.
We find that Mrs. Hinegardner was on a community mission and as such the agent of the community. Her negligence is imputed to her husband, the co-plaintiff in this suit, and thereby bars recovery to him. Vidrine v. General Fire and Casualty Company, supra.
For the foregoing reasons, the judgment appealed from is affirmed. Appellants to pay all court costs, both in this court and the district court.
Affirmed.